IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:15-CV-00016-RLV-DSC

| | |
|---|---|
| IDEAITALIA CONTEMPORARY FURNITURE CORP. d/b/a IDEAITALIA, <br><br> **Plaintiff,** <br><br> v. <br><br> SELECTIVE INSURANCE COMPANY OF AMERICA, <br><br> **Defendant.** | ) ) ) ) ) ) ) **ORDER** ) ) ) ) ) ) |

**THIS MATTER IS BEFORE THE COURT** on Defendant Selective Insurance Company of America's Motion for Summary Judgment and accompanying brief in support. [Doc. 20, 21]. Plaintiff Ideaitalia Contemporary Furniture Corp. d/b/a Ideaitalia filed a response [Doc. 23] to which Defendant replied [Doc. 24].

**I. PROCEDURAL HISTORY**

On February 5, 2015, Plaintiff filed suit against Defendant in this Court. [Doc. 1]. On March 3, 2015, Defendant filed an Answer to Plaintiff's Complaint. [Doc. 3]. On June 22, 2015, Defendant filed an Amended Answer to Plaintiff's Complaint. [Doc. 13]. On May 31, 2016, Defendant filed a motion for summary judgment (the "Motion") and an accompanying brief in support. [Doc. 20]; [Doc. 21]. On June 17, 2016, Plaintiff filed a response in opposition to the Motion. [Doc. 23]. On June 24, 2016, Defendant filed a reply brief in support of the Motion. [Doc. 24].

1

## II. JURISDICTION AND VENUE

Plaintiff is a North Carolina corporation and owns business personal property in Conover, North Carolina. [Doc. 1] at 1. Defendant is a New Jersey corporation with a principal place of business in New Jersey. [Doc. 1] at 2. Plaintiff seeks damages in excess of $75,000. *Id.* Because complete diversity exists between the parties and the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## III. STATEMENT OF FACTS

Plaintiff is a furniture assembly plant which assembles packages of manufactured furniture parts and ships the furniture to retailers. [Doc. 23] at 1. Defendant issued a commercial insurance policy, Policy Number S 1925307 (the "Policy"), to Plaintiff, insuring the business personal property at 1902 Emmanuel Church Road, Conover, Catawba County, North Carolina 28613 ( the "Property"). [Doc. 1] at 2; [Doc. 13] at 1; [Doc. 1-1].

The Policy covers "risks of direct physical loss unless the loss is limited or caused by a peril that is excluded." [Doc. 1-1] at 42. In pertinent part, the Policy states the following:

> 1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events[.] Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events[.]
>
> . . . .
>
> a. **Flood** – "We" do not pay for loss caused by "flood[.]" However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

*Id.* at 42. The Policy defines "flood" as "flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from any of these whether driven by wind or not." [Doc. 1-1] at 30.

2

Regarding coverage for "Sewer Backup and Water Below the Surface," the Policy states the following:

> "We" cover direct physical loss caused by
>
> a. Water that backs up through a sewer or drain, or
> b. Water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a covered building or structure, sidewalk, driveway, foundation, swimming pool, or other structure[.]
>
> The most "we" pay for loss caused by sewer back up and water below the surface in any one occurrence is $25,000[.]

[Doc. 1-1] at 39. Plaintiff purchased additional supplemental coverage for "Sewer Backup and Water Below the Surface," which increases coverage from $25,000 to $100,000. [Doc. 1-1] at 15; [Doc. 23] at 4.

On July 27, 2013, a storm producing large amounts of precipitation passed over the Property, and water entered a warehouse on the Property and damaged goods stored inside. [Doc. 1] at 2; [Doc. 13] at 2. Plaintiff reported the damage to Defendant, and Beau Menard and Steve Morris with Engineering Design and Testing evaluated the damage. [Doc. 1] at 2–3; [Doc. 13] at 2–3. Plaintiff submitted Beau Menard's expert report to the Court, and the parties do not dispute the findings of the report, which states the following conclusions:

> 1. On July 27, 2013, a storm producing large amounts of precipitation passed over the Ideaitalia Contemporary Furniture facility in Conover, North Carolina.
>
> 2. The old warehouse and new warehouse portions of the facility experienced flooding as a result of the storm.
>
> 3. Moisture infiltration that contributed to the interior flooding occurred in the following locations:
>
>    a. Percolation through cracks and joints in the concrete floor slab.

      b.      Through openings along the base of the metal cladding on the north wall in the old warehouse.

      c.      Through the brick retaining wall on the north wall of the old warehouse.

      d.      Through the roof covering of the transition build-out between the old warehouse and new warehouse.

      e.      An opening in the base of the east wall of the transition build-out.

[Doc. 21-2] at 17.

In September 2013, Defendant sent Plaintiff a letter, denying Plaintiff's claim. [Doc. 1] at 3; [Doc. 13] at 3. In denying coverage for the damage to the Property, the letter stated the following:

> While there is limited coverage for water that entered the building through cracks and seems [sic] in the slab along with water that entered through the retaining wall, there is no coverage for the surface/flood water that entered through the base of the walls of the building.
>
> Please be advised that Selective Insurance Company of America is denying your claim as the water loss is due in part by the flooding/surface water entering in through the base of the walls.

[Doc. 1-5] at 2.

**IV.    STANDARD OF REVIEW**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *accord.*

4

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same).

It is well-established that the mere existence of "some" factual disputes will not defeat summary judgment; rather, the dispute presented must be "genuine" and concern "material" facts. *Anderson*, 477 U.S. at 247-248 (emphasis in original); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Only disputes over facts that might affect the outcome of the suit under relevant governing law fall within the relevant category. *See Fields v. Verizon Servs. Corp.*, 493 Fed. App'x 371, 374 (4th Cir. 2012). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Abstract or conjectural doubts, minor discrepancies, and points irrelevant to the "material" facts are not genuine or material, and such do not cast sufficient doubt on the validity of testimony to preclude the entry of summary judgment. *Emmett*, 532 F.3d at 297; *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). The non-movant cannot demonstrate a triable issue of disputed fact by building one inference upon another. *Emmett*, 532 F.3d at 297 (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Although it is certainly true that "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party," *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc), it is equally true that a court is "well within its discretion in refusing to ferret out the facts that counsel has not bothered to excavate." *Cray Commc'ns. Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994). Mere conjecture and speculation, however, are insufficient to overcome a summary judgment motion. *See Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1386

(4th Cir. 1987); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241-46 (4th Cir. 1982); *accord Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

V. **CLAIM PRESENTED AND ANALYSIS**

Plaintiff claims that Defendant's refusal to pay for the damage to inventory stored in the Property constitutes a breach of insurance contract, and that due to Defendant's alleged inadequate investigation and claim adjustment, Plaintiff has not been restored to its pre-loss position. [Doc. 1] at 3. Additionally, Plaintiff claims that, as a result of the alleged breach of contract, Plaintiff has lost benefits of the Property, and continues to suffer the loss. *Id.* at 5.

Defendant argues that "the definition of 'Flood' in the Policy is an excluded peril in the Policy and acts as a bar to coverage in this case. [Doc. 13] at 6. Moreover, Defendant argues that "the language in the Policy regarding PERILS EXCLUDED states that any such loss caused directly or indirectly by an excluded peril is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events." [Doc. 13] at 7. In its brief in support of the Motion, Defendant points out that the Policy contains an explicit warning that the property insurance policy does not protect against losses from floods. [Doc. 21] at 9; [Doc. 21-8] at 11. Defendant argues that it is entitled to summary judgment because the plain language of the policy does not provide coverage for flood or surface water claims, and that the surface water that occurred at the Property is clearly excluded, regardless of other concurrent causes. [Doc. 21] at 18. The provision of the Policy stating that the exclusion applies regardless of other concurrent causes is commonly referred to as an anti-concurrent causation clause, and Defendant argues that such clauses are recognized in North Carolina. *Id.*

In its opposition to the Motion, Plaintiff argues that the flood exclusion is not all-encompassing. [Doc. 23] at 2. Plaintiff has up to $100,000 in coverage for "Sewer Backup and Water Below the Surface," and argues that $100,000 of the damage resulting from the percolation of water through the floor and from water below the surface entering the building should be covered. *Id.* at 3. Plaintiff admits that flood damage is excluded under this policy, but alleges that the inventory "was wet, but was not wet from flood waters." *Id.* Plaintiff claims that "[t]he contention in this case is reconciling the water damage at the property. Flood meaning surface water is excluded, but water from below the surface is covered." *Id.* at 4. Plaintiff attempts to frame this contention as a factual dispute over which form of water caused the damage to the inventory, but this alleged dispute is contradicted by the record and is immaterial due to the plain language of the anti-concurrent causation clause.

Plaintiff's attempt to distinguish between the effects of the surface water and the effects of the water below the surface is not supported by the record. In his report, Plaintiff's own expert, Beau Menard, stated that "[a]s damaged portions of the exterior [north] wall have created openings in the wall and the surface water accumulation was above that elevation, it is concluded that accumulated surface water entered the facility through the north wall of the old warehouse, during the July 27, 2013 storm." [Doc. 21-2] at 15. Additionally, Mr. Menard stated in his report that "The east wall of the build-out was observed to be deformed, which created an opening at the base of the wall. . . Given the amount of precipitation that was reported, and the exterior surface water levels from the July 27, 2013 storm, it is believed that the exterior surface water level in this area was at a higher elevation than the opening in the wall. Therefore, it is concluded that moisture infiltration through this location also occurred during the July 27, 2013 storm." *Id.* at 16. In his deposition, Mr. Menard stated that he believed all of the water intermixed inside the building.

7

[Doc. 21-3] at 8. He also stated that the surface water which entered through the north and east walls occurred before water percolated through the joints and cracks. *Id.* at 21. Mr. Menard estimated the water level inside the facility "based off of water marks on the surfaces to be 6 inches, 4- [sic] to 6 inches." *Id.* at 13. Carlo Bargagli, Plaintiff's CEO, stated in his deposition that, from his review of photographs taken inside the facility, "if it damaged furniture, [the water] was over 3 or 4 inches" because the furniture was stored on pallets. [Doc. 21-1] at 25–26. Given these undisputed facts, it is evident that surface water entered the facility, intermixed with water percolating from beneath the floor, caused flooding inside the facility, and damaged Plaintiff's inventory. All other allegedly disputed facts are immaterial, and this matter turns solely on whether North Carolina recognizes the Policy's anti-concurrent causation clause.

North Carolina recognizes and regularly enforces anti-concurrent causation clauses. *See Builders Mut. Ins. Co. v. Glascarr Properties, Inc.*, 202 N.C. App. 323, 688 S.E.2d 508 (2010) and *Magnolia Mfg. of N. Carolina, Inc. v. Erie Ins. Exch.*, 361 N.C. 213, 639 S.E.2d 443 (2007) (*per curiam*), 179 N.C. Ct. App. 267, 633 S.E.2d 841 (2006) (Tyson, J. dissenting). The Court acknowledges that "it is well settled in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 546, 350 S.E.2d 66, 73 (1986). It is also well settled, however, that "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). Therefore, the Court must enforce the clear interpretation of the contract as written. *See Builders*, 202 N.C. App. at 326, 688 S.E.2d at 511.

Viewing the facts in the light most favorable to Plaintiff, Plaintiff has not presented a genuine dispute as to any material fact, and, as a result, this matter can be decided as a matter of

law. The plain language of the Policy excludes flood or surface water damage, even if another covered peril, such as water from below the surface, concurrently contributes to the damage.

**IT IS, THEREFORE, ORDERED THAT** Defendant is **GRANTED** Summary Judgment on Plaintiff's claim for breach of contract.

Signed: December 14, 2016

Richard L. Voorhees
United States District Judge